UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:

Brian J. Benner, PC,   Case No. 15-44889[1]
                       Chapter 7
    Debtor.   Hon. Mark A. Randon
_____/

Edward Szachta and Mary Van Hevele,   Adversary Proceeding
                                      Case No. 15-04555
    Plaintiffs,

v.

Brian J. Benner,

    Defendant.
_____/

## OPINION AWARDING DAMAGES TO PLAINTIFFS BASED ON THEIR MOTION FOR DEFAULT JUDGMENT

**I.   INTRODUCTION**

Subsequently-disbarred attorney Brian J. Benner represented Edward Szachta and Mary Van Hevele ("Plaintiffs") in a personal injury lawsuit. Benner successfully negotiated a $1,000,000.00 settlement on Plaintiffs' behalf. But after receiving the settlement proceeds, he failed to turnover Plaintiffs' money, converted it to his own use, and months later gave them only a portion of what he owed. All the while, Benner and others lied to cover up the wrongdoing.

---

[1]This case is jointly administered with Brian J. Benner (case number 15-44890).

1

Benner and his law firm ("the firm") separately filed bankruptcy after Plaintiffs sued to recover the balance of their money. In this adversary proceeding, Plaintiffs challenge the dischargeability of Benner's debt under 11 U.S.C. §§523(a)(2)(A), 523(a)(4), and 523(a)(6). Benner did not answer Plaintiffs' amended complaint, and the Clerk of the Court entered a default; the Court subsequently granted Plaintiffs' motion for default judgment as to liability only. This opinion states the Court's findings of fact and conclusions of law after a trial on damages held on March 3, 2016.

Plaintiffs seek three categories of damages: (1) treble damages under Michigan's conversion statute, MICH. COMP. LAWS § 600.2919a; (2) damages for their mental distress and anguish; and (3) disgorgement of Benner's $330,121.74 attorney fee.[2] The Court finds Szachta is entitled to a $5,000.00 damages award for his mental distress; Plaintiffs are also entitled to trebling of their actual damages (including Szachta's mental distress). Accordingly, judgment will enter in favor of Plaintiffs in the amount of $1,245,730.44. Plaintiffs are not entitled to disgorgement of Benner's attorney fee.

## II.     FACTUAL ADMISSIONS

The following facts are admitted because Benner failed to answer Plaintiffs' amended complaint:

9.  Szachta and Van Hevele were clients of the Benner Defendants in connection with severe and permanent bodily injuries Szachta suffered in an

---

[2]Plaintiffs intend to submit a post-judgment motion regarding their request for attorney fees and costs, and pre-judgment interest; therefore, the Court will not address these requests in this opinion.

accident caused by a SMART bus on May 13, 2013.[3]

10. In 2013-14, the Benner Defendants represented Plaintiffs as their lawyers in their suit against Suburban Mobility Authority For Regional Transportation ("SMART") and its bus driver, Thomas A. Farless, to recover damages for the injuries they suffered relating to the accident. *Szachta, et al, v. SMART, et al*, Wayne County Circuit Court, Case No. 13-009441-NI (the "SMART Suit").

11. In or about May 2014, Plaintiffs agreed to settle their claims in the SMART Suit for $1,000,000, at the recommendation of the Benner Defendants.

12. On May 12, 2014, Plaintiffs met with Benner at the offices of Benner & Foran to sign the agreement for the settlement of their claims in the SMART Suit.

13. In connection with the settlement, the Benner Defendants provided Plaintiffs a Settlement Statement[.] The Settlement Statement was on the letterhead of Benner & Foran and reflected the following:

| | |
|---|---|
| Amount of Settlement | $1,000,000.00 |
| Total Expenses | $9,634.78 |
| Settlement Less Expenses | $990,365.22 |
| Attorney Fee | $330,121.74 |
| Amount Due Client | $660,243.48. |

14. At the meeting on May 12, 2014, Benner told Plaintiffs that they should not be concerned if they did not get their settlement proceeds quickly because SMART had approximately ninety (90) days to make the settlement payment. Benner also told them that it would take several months to get clearance from Medicare/Medicaid even though Szachta had not sought or received any Medicare or Medicaid payments for treatment of his injuries.

---

[3]"The Benner Defendants" referenced in the amended complaint include Benner and the firm. The firm was dismissed from the case on September 17, 2015.

15. On May 19, 2014, the Benner Defendants received from SMART's attorneys two settlement checks in the amounts of $175,525.90 and $824,474.10, totaling the $1,000,000 settlement.

16. The Benner Defendants did not notify Plaintiffs that SMART had made the settlement payment of $1,000,000 or that the Benner Defendants had received the settlement checks.

17. Benner was a signatory on the IOLTA client trust account of Benner & Foran, as well as a signatory on Benner & Foran's general checking account, which were maintained at Level One Bank.

18. On May 19, 2014, the Szachta Settlement Checks were deposited into the Benner & Foran IOLTA client trust account.

19. Beginning on May 20, 2014, and on multiple occasions thereafter, The Benner Defendants transferred and removed, or caused to be transferred and removed, the Szachta settlement funds from the Benner & Foran IOLTA client trust account through a series of wire transfers.

20. Beginning on May 21, 2014, and on multiple occasions thereafter, The Benner Defendants transferred and removed, or caused to be transferred and removed, the Szachta settlement funds from the Benner & Foran IOLTA client trust account through a series of electronic funds transfers into the Benner & Foran general account.

21. When The Benner Defendants transferred, or caused to be transferred, the Szachta settlement funds from [the] Benner & Foran IOLTA client trust account, they knew that Plaintiffs had not received their settlement funds.

22. When The Benner Defendants transferred, or caused to be transferred, the Szachta settlement funds from [the] Benner & Foran IOLTA client trust account, they knew that those funds properly belonged to Plaintiffs.

23. The Benner Defendants used the Szachta settlement funds in part to write checks for and to pay the operating expenses of Benner & Foran, including payment of salaries and "expenses" of Benner, and other payments to or for the benefit of Benner and/or Benner & Foran.

24. The Benner Defendants, without paying the $660,243.48 in net settlement proceeds to Plaintiffs, and without their authority, transferred and removed

4

the Szachta settlement funds from the IOLTA client trust account by the wire transfers and electronic funds transfers alleged above.

25. By transferring, or causing to be transferred, the Szachta settlement funds to the Benner & Foran general account, the Benner Defendants improperly commingled them with other funds.

26. Through the wire transfers and electronic funds transfers alleged above, The Benner Defendants wrongfully possessed and used the Szachta settlement funds for their own purposes, and thereby misappropriated and wrongfully converted Plaintiffs' settlement funds to themselves.

27. The Benner Defendants falsely represented to Plaintiffs that they (Benner Defendants) would only endorse and deposit the settlement checks into the Benner Defendants' trust account.

28. In reliance on Benner's statements that it would take several months to receive the settlement payment and the settlement funds when received would only be deposited into the Benner Defendants' trust account, Plaintiffs waited for the Benner Defendants to notify them that they had received the settlement funds and for the Benner Defendants to send the net settlement proceeds to Plaintiffs.

29. In July and August 2014, Szachta began calling the Benner Defendants to inquire about the status of the settlement payment. However, the Benner Defendants wrongfully withheld from Plaintiffs the fact that the Benner Defendants had received the settlement proceeds and transferred them to the Benner Defendants' general account.

30. In October 2014, the Benner Defendants made a partial payment of Plaintiffs' settlement funds in the amount of $250,000 to Plaintiffs. However, the Benner Defendants withheld and have not paid $410,243.48, the balance of Plaintiffs' settlement proceeds, to Plaintiffs.

## III. JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## IV. ANALYSIS

### A. *Szachta is Entitled to Mental Distress Damages*

Plaintiffs seek damages for hurt feelings, outrage, indignity, humiliation, mental distress, pain, anxiety, and anguish in the form of either exemplary or actual damages. The Michigan Supreme Court has determined that "actual damages . . . include compensation for mental distress and anguish." *Veselenak v. Smith*, 414 Mich. 567, 574 (1982); *see also Wiskotoni v. Michigan Nat'l Bank-West*, 716 F.2d 378, 389 (6th Cir. 1983) (under Michigan law, actual damages for mental distress and anguish are recoverable in a tort case). Plaintiffs are entitled to recover for "all injuries that were the legal and natural consequences of [Benner's] wrongful conduct and which might reasonably have been anticipated." *Bunting v. G.L. & Associates, LLC*, No. 248666, 2004 WL 2674313, at *2 (Mich. Ct. App. Nov. 23, 2004).

After hearing Szachta and Van Hevele's testimony, and considering their credibility and demeanor, the Court awards Szachta mental distress damages. He testified that Benner's conduct has caused him to be irritable, withdrawn, stressed, panicked, angry, upset, and anxious. When he wakes up at night, his mind wanders to Benner's actions, the contemplation of which keeps him up throughout the night. Szachta further testified that he was an avid hunter, whereas today he often simply sits in the woods. His mind continuously drifts off, always returning to Benner's actions and the effect they

have had on Plaintiffs' lives.[4] On cross-examination, however, Szachta conceded that he is not taking any medication for stress or anxiety, and he has not seen a psychologist or psychiatrist.

Benner has caused Szachta to suffer some degree of mental distress. But the value of such mental distress is difficult to quantify. Szachta did not present evidence from a mental health physician, nor did he seek specific damages for payment of mental health treatments. He also has other sources of mental distress–unrelated to Benner's conduct.

The Court awards Szachta's $5,000.00 in actual damages.[5]

### B.     *Plaintiffs are Entitled to Treble Damages*

Pursuant to Michigan Compiled Laws § 600.2919a(1)(a), "[a] person damaged as a result of . . . the following *may* recover [three] times the amount of actual damages sustained, plus costs and reasonable attorney fees: [a]nother person's stealing or embezzling property or converting property to the other person's own use" (emphasis added).

Based on the statute's permissive language, courts have held that "the trier of fact

---

[4]The Court declines to award mental distress damages to Van Hevele. She testified that although she is distressed, and has lost focus, she is able to compartmentalize her feelings enough to continue to pay bills, perform her job, and support Szachta.

[5]Because the Court awards Plaintiffs mental distress damages in the form of actual damages, they are not entitled to mental distress damages in the form of exemplary damages. *Veselenak v. Smith*, 414 Mich. 567, 572 (1982) ("the award of exemplary damages to injury of feelings is duplicative of the award of ordinary damages for mental distress and anguish").

has the discretion to decide whether to award treble damages[.]" *LMT Corp. v. Colonel, L.L.C.*, No. 294063, 2011 WL 1492589, at *3 (Mich. April 19, 2011); *see also In re Stewart*, 499 B.R. 557, 570 (Bankr. E.D. Mich. 2013) ("[t]rebling isn't automatic; it is within the Court's discretion based on what is fair under the circumstances"). To award treble damages, Benner's actions must arise above that of negligence–there must be some evidence of "willfulness, wantonness, or evil design." *Mich. Land & Iron Co. v. Deer Lake Co.*, 60 Mich. 143, 145-46 (1886).

Benner's conduct was more than negligent. This was no bookkeeping error. He willfully withheld Plaintiffs' money and used it to satisfy personal and firm obligations, knowing they would suffer harm as a result of their inability to access hundreds of thousands of dollars they had expected and made plans in anticipation of receiving. The Court exercises its discretion to award Plaintiffs treble damages. The remaining question is the amount of "actual damages" that must be trebled.

"Actual damages" is not defined in the statute; therefore, the Court looks to dictionary definitions for guidance. *Oakland Cnty. Bd. of Cnty. Rd. Commissioners v. Michigan Prop. & Cas. Guar. Ass'n*, 456 Mich. 590, 604 (1998); *see also United States v. Zabawa*, 719 F.3d 555, 559 (6th Cir. 2013). Black's Law Dictionary defines "actual damages" as: "An amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." BLACK'S LAW DICTIONARY (10th ed. 2014).

Because Benner repaid Plaintiffs $250,000.00, their actual and proven economic loss is $410,243.48. *See Alken-Ziegler, Inc. v. Hague*, 283 Mich. App. 99, 103 (2009)

("[a]pplying [Black's Law Dictionary] definition to MCL 600.2919a, 'actual damages' means the actual loss a complainant suffered as a result of a defendant's criminal conduct"); *see also Masters v. Hamama (In re Hamama)*, 182. B.R. 757, 758 (Bankr. E.D. Mich. 1995) (deducting the amount that was repaid to determine "actual damages"). Plaintiffs are entitled to that amount trebled, which equals $1,230,730.44.

In addition, Szachta is entitled to trebling of his mental distress damages for a total of $15,000.00. *See Dunbar v. Dunbar*, No. 232307, 2003 WL 21465337, at *5 (Mich. Ct. App. June 24, 2003) (actual damages includes "economic loss and non-economic loss, including compensation for shame, mortification, mental pain, and anxiety").

### C.  *Plaintiffs are not Entitled to Disgorgement of Benner's Attorney Fee*

Plaintiffs seek disgorgement of the $330,121.74 attorney fee Benner received for services rendered during the personal injury lawsuit. Importantly, Plaintiffs do not allege any misconduct by Benner in negotiating the settlement; he obtained a fair settlement, which Plaintiffs accepted.

Although Benner clearly engaged in misconduct *after* the settlement was reached–and was ultimately disbarred–his misconduct is "severable" from the work he performed on Plaintiffs' personal injury lawsuit. *See Rippey v. Wilson*, 280 Mich. 233, 245 (1937):

> An attorney may lose his right to fees for unprofessional conduct or abandonment of his client's case. But we find no authority that where the services are severable, misconduct as to one phase forfeits fees as to another. Such a rule would be generally unfair and is contrary to the authorities.

9

15-04555-mar    Doc 60    Filed 03/30/16    Entered 03/30/16 16:30:28    Page 9 of 11

Benner is entitled to his attorney fee on the theory of quantum meruit, which is applied to prevent unjust enrichment.[6] *See Reynolds v. Polen*, 222 Mich. App. 20, 26 (1997):

> [Q]uantum meruit recovery of attorney fees is barred when an attorney engages in misconduct that results in *representation* that falls below the standard required of an attorney (e.g., disciplinable misconduct under the Michigan Rules of Professional Conduct) or when such recovery would otherwise be contrary to public policy.

(Emphasis added); *see also* Michigan Court Rule 9.119(F) ("A disbarred . . . attorney may be compensated on a quantum meruit basis for legal services rendered and expenses paid by him . . . prior to the effective date of the disbarment[.]")

Plaintiffs are not entitled to recover Benner's attorney fee, as this would unjustly compensate them for Benner's work and defeat the purpose of disgorgement. *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978) ("The purpose of disgorgement is not to compensate the victims of the fraud, but to deprive the wrongdoer of his ill-gotten gain."). Benner's conduct–shameful as it was–came after he properly earned his attorney fee.

## V. CONCLUSION

Szachta is entitled to a $5,000.00 damages award for his mental distress; Plaintiffs are also entitled to trebling of their actual damages (including Szachta's mental distress). Accordingly, judgment will enter in favor of Plaintiffs in the amount of $1,245,730.44. This amount is nondischargeable under 11 U.S.C. §§523(a)(2)(A), 523(a)(4), and 523(a)(6). Plaintiffs are not entitled to disgorgement of Benner's attorney fee.

---

[6]"Quantum meruit" literally means "as much as he has deserved." *Reisenfeld & Co. v. Network Grp., Inc.*, 277 F.3d 856, 865 n.1 (6th Cir. 2002).

Plaintiffs have until *April 18, 2016* to file a post-judgment motion seeking attorney fees and costs, and prejudgment interest. Benner has until *May 2, 2016* to file any response.

**IT IS ORDERED.**

**Signed on March 30, 2016**  /s/ **Mark A. Randon**
**Mark A. Randon**
**United States Bankruptcy Judge**